## THE PEOPLE vs. MADAME RESTELL.

In a criminal case, where the offence is not capital, a writ of error is a writ of right, which no justice of the Supreme Court can refuse to allow.

To stay proceedings, however, on the conviction, is a matter which, under the statute, is submitted to the discretion of the judge allowing the writ; and this power should be exercised, where there is any reasonable doubt that the conviction can be sustained.

The statute (2 R. S. 736, § 25,) requires that if the judge who tried the cause shall refuse to suspend the execution of the sentence, he shall give his reasons for his refusal, so that the prisoner may appeal therefrom.

In cases of felony, the prisoner should *not be let to bail* where, upon a full and impartial preliminary examination, there is good reason to believe he is guilty. Therefore, provision has been made by statute, providing for bringing that examination before the officer allowing the writ of habeas corpus.

*New York, November,* 1847.—*An application to let the prisoner to bail.* EDMONDS, Justice.—In a criminal case, where the offence is not capital, a writ of error is a writ of right, which no judge of this court can refuse to allow. To stay proceedings, however, on the conviction is a matter which, under the statute, is submitted to the discretion of the judge allowing the writ. I have often been called upon to exercise this power, and I have never hesitated to exercise it, where there was any reasonable doubt that the conviction could be sustained.

This also has been the uniform practice of the judges of the Supreme Court under the old constitution, and I know of no reason, unless it might be a willingness to yield to popular clamor, which could take this case out of the reach of a rule so universal and so long continued in its application. And there is good reason for the exercise of this

power. It is impossible that even the best regulated court should always be certain that its judgments are right. The imperfection of human testimony, the haste and excitement of a trial, and the want of familiarity with the questions of law which suddenly arise, all operate at times to throw doubts around the decisions of our very best courts.

In such cases it is always wise that time and opportunity for a calm review should be taken, for the administration of justice wins confidence only when it is discreetly and dispassionately performed. For such a review our statutes have amply provided, in such manner, that in cases like this it is a matter of absolute right, of which the prisoner cannot be deprived.

Of what avail would this right be if the execution of the judgment could not be stayed until the completion of the review? What sort of justice would it be to reverse the judgment of conviction, after the prisoner had died upon the scaffold, or served his term, in whole, or in part, in the prison?

Some striking instances are familiar to me. One I remember well. It was the case Haynes, a young man of great respectability, with an interesting family, who was convicted in our Court of Sessions. The Recorder refused to stay the proceedings, and after Haynes had spent eighteen months in the state prison, our Court of Errors almost unanimously decided that no crime had in fact been committed. Another instance has recently occurred in the case of Haughey, whose conviction at the King's General Sessions has, within a few days, been reversed by the Supreme Court. Upon a perusal of the bill of exceptions in his case, I last July ordered the sentence to be suspended until the case could come before the Supreme Court. For some cause unknown to me, the sheriff of that county saw fit to disregard my order, and the consequence now seems to be that the prisoner has been compelled illegally to suffer several months' imprisonment in the state prison.

And it is by no means an unfrequent occurrence that prisoners are discharged from our state prisons by a reversal of the judgments against them.

These things are, if possible, to be avoided, if respect for the administration of justice is to be preserved.

In the case now before me, the Recorder might have suspended the execution of the sentence, if he had supposed that there were any doubts about the accuracy of his decisions; and the statute (2 R. S. 736, § 25) requires that if he shall refuse to do so, he shall give his reasons for his refusal, so that the prisoner may appeal from his refusal to a judge of this court,

and the judge of this court, in passing upon it, may have the benefit of the enlightened decision of the officer who tried the cause. It was represented to me that the recorder had refused to grant the stay, and had refused to attach his reasons for so doing. I was therefore compelled to act upon the matter without the aid which I had a right to expect from the superior knowledge of the case possessed by the officer who presided at the trial.

I was obliged to decide only from a perusal of the bill of exceptions, as signed by the judges of the sessions. On such perusal I found a point of law decided directly contrary to what I have long supposed it to be, and contrary to the manner in which I had uniformly held it to be, when presiding in criminal cases. Either I was wrong, and had been so for a long time, or the question was one proper to be submitted to a superior tribunal. At all events, it was apparent that the exception was not frivolous, but had merits in it; and, I repeat, the practice has been in such cases, and ought to be, to stay the execution until the accuracy of the judgment should be determined. It is undoubtedly to be regretted that any conviction, just and proper on the facts of the case, should be set aside for an error in law; but no such regrets, however strong they might be, would justify any judge in wresting the rules of law from their uprightness. I therefore, in conformity with my usual practice, granted the order to stay proceedings until the decision of the Supreme Court could be obtained. The present application to let the prisoner to bail is another matter.

When she was brought before me, on the occasion of her being first arrested, and before her trial, I refused to interfere, because the power to let her to bail was solely in the Court of Sessions; but at that time I intimated my opinion that she ought not to have been let to bail at all. In cases of felony, I am satisfied that the practice of the late Judge Cowen, as detailed by him in the McLeod case, is the correct one, and that is, not to let to bail where, upon a full and impartial preliminary examination, there is good reason to believe the guilt of the prisoner. Therefore provision has been made by statute, providing for bringing that examination before the officer allowing the writ of habeas corpus.

In this case it is established by the finding of the jury, that the prisoner was guilty of producing the abortion; whether that act was a felony or a mere misdemeanor depends, as I understand the statute, upon the question whether the child was quick or not at the time it was destroyed. It is true that the fact has also been found by the jury, but it is also true that if the conviction should be set aside, she may yet, on this indictment, be

found guilty of the felony. And the case would, therefore, seem to come within Judge Cowen's rule, my approval of which has already been expressed, and which ought, more especially, to be enforced after a conviction.

There might be an exception to this rule, if the question which comes up to this court, like that in Hayne's case, involved the main question of guilt or innocence. But it does not involve that question, except remotely. It aims rather at the credibility of the witness; and if the rejected question should be put and answered, the prisoner might still be convicted, and of the larger offence, the felony. I have repeatedly acted upon this principle, and I again say I know no reason why this case should be moved from the operation of the established practice.

There is another reason why it should be improper to let the prisoner to bail. It is, as I understand the universal practice of the prisons in this state, (how well founded I will not say, though I am told it has been sanctioned by high authority,) to regard the term of imprisonment as commencing on the day the sentence is pronounced, and not on the day when the prisoner enters the prison. To allow the prisoner, then, to go at large on bail, would be in effect, in case the conviction should be sustained, abstracting from the term of her sentence so much time as would elapse before the ultimate decision, perhaps in the court of appeals, on her writ of error. This would be a direct bounty to convicts to avail themselves of their right to take exceptions on the trial and sue out their writs of error, whether the question to be carried up involved the merits or not. The mischiefs attending bills of exceptions in criminal cases are great enough already, without unnecessarily adding this difficulty to them.

The prisoner then stands before me in this position; that if the conviction shall be confirmed, she is guilty of a misdemeanor, and ought not to be at large: and if the conviction be reversed, she may be convicted of a felony, where the fact on which the conviction would rest has already been established by the finding of the jury.

I must therefore deny the application to let to bail.

The prisoner was then remanded.